# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

A silver iPhone with serial number 353318072499360, which is currently in evidence at the Wauwatosa Police Department, 1700 N. 116th Street, Wauwatosa, WI, more fully described on Attachment A.

Case No. 17-M-1259

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
Title 18, U.S.C. § 1951(a) (Hobbs Act Robbery) and Title 18, U.S.C. § 924(c) (use of firearm)

The application is based on these facts: See attached affidavit.

_Applicant's signature_

FBI Special Agent Benjamin Hruz
_Printed Name and Title_

Sworn to before me and signed in my presence:

Date: 5/11/17

_Judge's signature_

City and State: Milwaukee, Wisconsin
William E. Duffin , U.S. Magistrate Judge
_Printed Name and Title_

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Benjamin Hruz, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed for over nineteen years. I am currently assigned to the Milwaukee Area Violent Crimes Task Force ("MAVCTF"). My duties as a Special Agent with the FBI include investigating violent crimes such as commercial robberies, carjackings, bank robberies and violent criminal enterprises. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, and federal law enforcement agencies.

2. This affidavit is based upon my personal knowledge as well as information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

3. This affidavit is submitted in support of an application for a search warrant for a silver iPhone with serial number 353318072499360 (Inventory #17-001394-2) (the "Device"), which is more fully described on Attachment A and is currently in evidence at the Wauwatosa Police Department, for evidence of involvement in the

Hobbs Act armed robbery described below, in violation of Title 18, United States Code, Sections 1951(a) and 924(c).

4. Since this affidavit is only for the limited purpose of securing a search warrant, I have not set forth each and every fact known to me concerning this investigation. I have included what I believe are facts sufficient to establish probable cause for the warrant sought.

## PROBABLE CAUSE

5. On December 28, 2016, at approximately 9:15 a.m., two black male subjects robbed the Swan Pharmacy located at 9130 W. North Ave., City of Wauwatosa, Wisconsin. At all relevant times, the Swan Pharmacy located 9130 W. North Avenue in Wauwatosa, Wisconsin was engaged in the sale of articles and commodities in interstate commerce. One of the subjects was armed with a black semi-auto handgun. The robbers ordered the employees to the ground and threatened to kill them if the victims did not comply with their demands. The subjects obtained a quantity of Schedule II narcotics and fled out the back door on the east side of the building.

6. Victim J.D. stated that she ran outside after the armed robbery and observed the two armed robbers in a black SUV leaving the alley and driving northbound on N. 91st St. Video footage from Swan Pharmacy covering the alley to the north of the pharmacy confirmed the suspects arrived and fled in the Lexus SUV. The SUV was last seen on video footage turning northbound on N. 91st St. from the alley. As Wauwatosa police officer Mike Nelson responded to the scene, he observed a black

2

2006 Lexus SUV (IL Lic. Z85 5229) that was abandoned, but left running, parked in the 2600 block of N. 91st St., on the wrong side of the road. A check of the Illinois license plate Z85 5229 revealed that the black 2006 Lexus SUV had been stolen in an armed robbery in Chicago earlier in the morning of December 28, 2016. Sergeant Brian Skornia of the Wauwatosa Police Department spoke with F.G., the listed owner of the black Lexus SUV and victim of the earlier armed robbery in the City of Chicago. F.G. provided a description of the subjects that robbed him as two black male subjects, 20-30 years old, one wearing a black jacket and one wearing a maroon jacket. Surveillance video from the Swan Pharmacy armed robbery revealed that one of the robbers was wearing a black jacket and one was wearing a maroon jacket.

7. The recovered Lexus SUV was processed and several latent fingerprints were recovered. The WI State Crime lab checked the recovered fingerprints first through AFIS, a state of Wisconsin database, which returned negative results. The WI State Crime Lab then searched the recovered prints through the FBI NGI database, a nationwide database, which revealed that two of the fingerprints recovered from the interior of the vehicle belonged to Elix J. Powell (M/B 11-30-98), who has an IN state number of IN196464. Investigators from the Chicago Police Department interviewed F.G. and F.G. stated that he does not know Elix Powell and that there was no legitimate reason that Powell's fingerprints would be in his Lexus.

8. A search warrant for the Facebook account belonging to Elix Powell was obtained and the contents of Elix Powell's Facebook account revealed that, during the

3

days leading up to and on December 28, 2016, the day of the armed robbery of the Swan Pharmacy, Elix Powell provided the phone number of 317-602-9150 to others as a way to contact him (Powell). Powell also stated in other Facebook conversations that 317-602-9150 was "Monaye's number." When the phone number 317-602-9150 is searched through Facebook, Facebook shows the phone number is registered to the account "Kiim Wells." During multiple private Facebook conversations during December of 2016, "Kiim Wells" told Elix her number was 317-602-9150.

9. A search warrant for historical cellsite information and phone records for 317-602-9150 was obtained, which revealed that 317-602-9150 left Indianapolis at approximately 11:00 p.m. (CST) on December 27, 2016. The historical cellsite records reveal that 317-602-9150 was in the immediate area of the carjacking in Chicago at the time of the carjacking during the early morning hours of December 28, 2016 and left the area immediately following the carjacking and arrived in Milwaukee at approximately 6:06 a.m. (CST) on December 28, 2016. The cellsite records reveal that 317-602-9150 was in the immediate area of the Swan Pharmacy at the time of the armed robbery and left the area immediately following the armed robbery and traveled back to Indianapolis and arrived in Lebanon, IN at approximately 1:09 p.m. on December 28, 2016.

10. On January 2, 2017, five days after the armed robbery of Swan Pharmacy, Kiim Wells made the following public post: "💊💊💊💊 hmu." Based upon my training and experience and the investigation to date, case agents are aware that "hmu" means "hit me up," and case agents believe that Kiim Wells'

4

post was to solicit customers to buy pills from her. Similarly, Elix posted on his Facebook page the day of the armed robbery, "I got what you need 🔴🔴🔴"."

11. On January 5, 2017, law enforcement in Lawrence, IN arrested Monaye A. Williams (F/B 07/12/97) and Marqucal Flemming (M/B 01/12/95) for warrants and other charges. During the investigation, a stolen Glock 19 (Serial Number YTP840) was found inside the hotel room Williams and Flemming were arrested in. A photo of the gun inside of the hotel room was taken. The Glock had an extension mounted on the "tang" of the gun, long, after-market sights, and a grip extension on the magazine. The surveillance video from the Swan Pharmacy robbery captured quality images of the gun possessed by the suspects during the robbery. In the video, the distinct features of the after-market sights, the extended tang and the grip extension on the magazine are visible. The shape, size, color and the features of the gun used in the robbery are consistent with that of the gun recovered during the arrest of Monaye Williams.

12. On January 8, 2017, there was a private message between "Mika Thurman" and Elix Powell during which they discuss Monaye's arrest and Powell states "They stupid asf did he get caught with the gun."

13. A review of the contents of Elix Powell's Facebook account reveal that from December 29, 2017, the day after the armed robbery of the Swan Pharmacy, until January 9, 2017, Powell provided the phone number 317-992-3381 to others twenty-seven times in Facebook private message conversations. Records obtained from T-

5

Mobile regarding 317-992-3381 reveal that the subscriber for the phone is Elix Powell of 4554 W. 34th St., in Indianapolis, IN. The phone registered to the account is an iPhone with a serial number of 353318072499360. During a Mirandized interview with law enforcement, Powell advised his phone number is 317-992-3381.

14. On January 12, 2017, the Carmel, Indiana police department arrested Elix Powell following a vehicle pursuit of a stolen Chevy Camaro. The Chevy Camaro was stolen a short time before the pursuit was initiated in Westfield, IN. At the time of his arrest, Powell was in possession of a silver iPhone, which has a serial number of 353318072499360 (the Device). The Carmel, Indiana police department maintained custody of the Device until Tuesday, April 4, 2017 when Detective Martin Keck of the Wauwatosa Police Department took custody of the Device and the Device is currently in the custody of the Wauwatosa Police Department with Inventory #17-001394-2.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and

6

moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna

7

receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant

8

does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20. Based on the facts contained within this affidavit, I believe that probable cause exists to search the Device, which is more particularly described in Attachment A, and which are currently located in evidence at the Wauwatosa Police Department, for evidence of armed Hobbs Act robbery.

9

## ATTACHMENT A

The following property is to be searched:

a. a silver iPhone with serial number 353318072499360 (Inventory #17-001394-2) (the Device).

The Device is currently in evidence at the Wauwatosa Police Department, 1700 N. 116th Street, Wauwatosa, WI.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

a.  All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 1951(a) (Hobbs Act robbery), and Title 18, United States Code, Section, 924(c) (Use of Firearm during Crime of Violence) involving Elix Powell, to include:

   a. Any information related to the possession or sale of Schedule II narcotics, including any pills;

   b. any information related to possession of firearms (including photographs, text messages, emails, or any other communication information);

   c. any information related to the accruing of robbery proceeds (including photographs, text messages, emails, or any other communication information);

   d. any information recording Elix Powell or his co-actors schedule or travel in December of 2016;

   e. any web search information related to the offenses described above;

   f. photographs of locations evidencing pre-robbery surveillance; and

   g. any communications via text messages, email, Facebook, Twitter, or other web-based applications between Elix Powell and others regarding the offenses described above.

b.  Evidence of user attribution showing who used or owned the device at the time the information described in this warrant was created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have

been created or stored, including any form of electronic storage and any photographic form.